[Cite as *Andover Village Retirement Community v. Cole*, 2014-Ohio-4983.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**ASHTABULA COUNTY, OHIO**


| | | |
|---|---|---|
| ANDOVER VILLAGE RETIREMENT COMMUNITY, | : | **O P I N I O N** |
| | : | |
| Plaintiff-Appellee, | | |
| | : | **CASE NO. 2013-A-0057** |
| - vs - | | |
| | : | |
| RICHARD COLE, | | |
| | : | |
| Defendant-Appellant. | | |


Civil Appeal from the Ashtabula County Court, Eastern District, Case No. 2012 CVF 00208E.

Judgment: Affirmed.


*Mark C. Brncik*, and *James Y. Oh*, Javitch, Block & Rathbone, L.L.P., 1100 Superior Avenue, 19th Floor, Cleveland, OH 44114 (For Plaintiff-Appellee).

*Katherine S. Reidel*, Law Offices of Katherine S. Riedel Co., L.P.A., Jefferson Commercial Park, 148 State Route 46 North, No. 5, Jefferson, OH 44047 (For Defendant-Appellant).


THOMAS R. WRIGHT, J.

{¶1} This appeal is from the Ashtabula County Court, Eastern District. After a bench trial, the trial court found appellant Richard Cole owed $8,705.56 to appellee Andover Village Retirement Community ("Andover") for unpaid expenses regarding services provided to Cole's mother at Andover. Cole appeals that judgment and claims that the trial court erred in interpreting the terms of the contract. For the following reasons, we affirm.

**{¶2}** On February 24, 2011 Andover admitted Dorothy Bowker, Cole's mother, as a patient in its twenty-four hour nursing home. Cole possessed power of attorney over his mother and signed a contract entitled Nursing Home Admission Agreement ("Admission Agreement") and another document entitled Voluntary Assumption of Personal Responsibility ("Personal Responsibility Contract"). The Admission Agreement establishes, inter alia, the services and care Andover will provide for Cole's mother and the compensation Andover will receive in exchange for said services. Of particular note, clause 2(l) provides that:

**{¶3}** "When Resident's Responsible Person signs this Agreement on behalf of Resident, Resident's Responsible Person is responsible for payment to [Andover] to the extent Resident's Responsible Person has access and control of Resident's income and/or resources. By signing this Agreement Resident's Responsible Person does not incur personal financial liability."

**{¶4}** At the beginning of the Admission Agreement, Cole's mother is defined as the Resident and Cole is defined as the Resident's Responsible Person. The Admission Agreement further clarified that the Resident's Responsible Person referred to "an attorney-in-fact under a valid power of attorney executed by Resident or a conservator or guardian of the person or the estate of Resident, or representative payee appointed for Resident or other person who has lawful access to Resident's income and/financial (sic) resources."

**{¶5}** On the same day, Cole also signed the Financial Responsibility Contract, which states in pertinent part that "I, Richard Cole, voluntarily assume personal financial responsibility for the care of Resident in the preceding Agreement."[1]

---

1. There is no dispute that the preceding agreement is the Admission Agreement.

**{¶6}** Upon Cole's mother passing away, Andover sent Cole a bill for unpaid expenses. When Cole refused to pay, Andover initiated this collection action against him. After a bench trial, the trial court found Cole liable to Andover in the amount of $8,705.56. This appeal followed.

**{¶7}** As his sole assignment of error, Cole asserts that:

**{¶8}** "The trial court erred in its determination that defendant-appellant was personally liable to plaintiff based solely on the document entitled "Voluntary Assumption of Financial Responsibility."

**{¶9}** Within this assignment of error, Cole asserts two arguments. First, he argues that the Financial Responsibility Contract and the Admission Agreement are one contract. The former, according to Cole was a writing incorporated into the Admission Agreement because both contracts were conducted in the same transaction.

**{¶10}** Cole posits that the Admission Agreement and the Financial Responsibility Contract contain conflicting statements as to Cole's financial responsibility for his mother's care, and therefore one of these statements must trump the other. Specifically, Cole claims that (1) the clause in the nursing home admission agreement absolving him of personal financial responsibility is a specific clause, (2) the clause in the voluntary assumption of care agreement is a general clause and (3) when a specific clause and a general clause conflict, the specific prevails over the general clause. In opposition, Andover claims that the nursing home admission agreement and the voluntary assumption of financial responsibility document are two separate contracts, and that unlike the Admission Agreement, the Financial Responsibility Contract imposes personal financial liability on Cole.

3

{¶11} The interpretation of a contract is a question of law that we review de novo. *Allstate Indemn. Co. v. Collister*, 11th Dist. Trumbull No. 2006-T-0112, 2007-Ohio-5201, ¶15, citing *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108 (1995). Our primary goal is to ascertain and give effect to the intent of the parties. *Hamilton Ins. Servs., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273 (1999). We presume the intent of the parties to a contract resides in the language used in the written instrument. *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130 (1987), paragraph one of the syllabus. A contract is to be read as a whole and the intent of each part gathered from a consideration of the whole. *Saunders v. Mortenson*, 101 Ohio St. 3d 86, 2004-Ohio-24.

{¶12} First, we address whether the Admission Agreement and the Financial Responsibility Contract are the same contract. We conclude they are not. The terms of the Financial Responsibility Contract specifically reference the Admission Agreement as the "preceding [a]greement," thereby indicating that the parties understood the two documents as separate contracts. Furthermore, Cole does not suggest that that the Financial Responsibility Contract was ever attached to or formally incorporated into the Admission Agreement. Accordingly, Cole's contention that the two documents are part of one contract is without merit.

{¶13} In regard to whether the terms of the two contracts conflict with one another, the terms of one contract may be affected by another writing executed as part of the same transaction. *Zito v. Tamborsky*, 11th Dist. Lake No. 2003-L-178, 2005-Ohio-1799, at ¶25, citing *Edward A. Kemmler Mem. Found. v. 691/733 East Dublin-Granville Rd. Co.*, 62 Ohio St.3d 494, 500, (1992) (a contract and a separate written

4

instrument relating to the same transaction must be construed with reference to each other.)

{¶14} The Admission Agreement's clause on liability states that, "By signing this Agreement, Resident's Responsible Person does not incur personal financial liability." However, in his capacity as power of attorney, he is responsible for payment of services to the extent he can access his mother's available funds. The Financial Responsibility Contract, however contains no reference to the "Resident's Responsible Person," but rather refers to Cole by his legal name. As such, that part of the contract refers to obligations that Cole incurs in his personal capacity in exchange for Andover's services for his mother. In sum, the Admission Agreement obligated Cole to use his position as power of attorney over his mother's funds to pay Andover, and the Financial Responsibility Contract acted as a surety that extended personal financial liability to him.

{¶15} Cole next argues that the terms of the Financial Responsibility Contract are ambiguous because the term "financial responsibility," as used in the Financial Responsibility Contract must mean something different than the word "liability" used in the Admission Agreement. Generally in interpreting a statute or a contract, we presume that the use of different words indicates an intention that the words possess different meanings. *Id.* As previously discussed, the two documents are not the same contract. They are separate writings addressing the same transaction and therefore, the terms responsibility and liability can refer to the same concept without violating rules of contract interpretation. Simply stated, the "Admission Agreement" imposed no personal liability, but the "Personal Responsibility Contract" did. The latter was not

5

executed for no reason and would result in a nullity if we were to accept Cole's position.

{¶16} The sole assignment of error is without merit.

{¶17} The judgment of the trial court is affirmed.


TIMOTHY P. CANNON, P.J.,

DIANE V. GRENDELL, J.,

concur.