[Cite as *Kennedy v. Robinson Mem. Hosp.*, 2016-Ohio-6990.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**PORTAGE COUNTY, OHIO**

| | | |
|---|---|---|
| CLAUDIA L. KENNEDY, EXECUTRIX OF THE ESTATE OF DONALD R. GERRES, DECEASED, | : | **O P I N I O N** |
| | : | |
| Plaintiff-Appellee, | : | |
| | | **CASE NO. 2015-P-0047** |
| - vs - | : | |
| ROBINSON MEMORIAL HOSPITAL, et al., | : | |
| Defendants, | : | |
| EMERITUS OF RAVENNA SENIOR LIVING, | : | |
| | : | |
| Defendant-Appellant. | | |

Civil Appeal from the Portage County Court of Common Pleas, Case No. 2014 CV 00764.

Judgment: Affirmed in part, and reversed and remanded in part.

*Michael D. Shroge* and *Frank Gallucci, III,* Plevin & Gallucci, L.P.A., Co., 55 Public Square, Suite 2222, Cleveland, OH 44113 (For Plaintiff-Appellee).

*Keith Hansbrough* and *Kenneth W. McCain,* Marshall Dennehey Warner Coleman & Goggin, 127 Public Square, Suite 3510, Cleveland, OH 44114 (For Defendant-Appellant).

COLLEEN MARY O'TOOLE, J.

{¶1} Emeritus of Ravenna Senior Living appeals from the judgment entry of the Portage County Court of Common Pleas, denying its motion to stay proceedings and

compel arbitration in a wrongful death and survivorship action filed by Claudia L. Kennedy, Executrix of the Estate of Donald R. Gerres. Essentially, Emeritus contends the trial court erred in interpreting a power of attorney signed by Mr. Gerres. We affirm in part, and reverse and remand in part.

{¶2} September 18, 2009, Mr. Gerres signed a power of attorney, based on the form set forth in former R.C. 1337.18. The power of attorney provided as follows:

{¶3} "3. Designation of Agent(s)

{¶4} "I, the principal, appoint and designate the following as my Attorney(s)-in-fact.

{¶5} "Claudia L. Kennedy

{¶6} "* * *

{¶7} "4. Designation of Successor Agent(s).

{¶8} "I, the principal, hereby appoint and designate the following as my alternate or successor Agent(s).

{¶9} "Name: Michele Evans

{¶10} "* * *

{¶11} "Name: Nicole Mager

{¶12} "* * *

{¶13} "Any person can rely on a statement by a successor Agent that he or she is properly acting under this document and may rely conclusively on any action or decision made by that successor Agent. That person does not have to make any further investigation or inquiry."

2

{¶14} The power of attorney gave the attorney-in-fact or agent plenary powers to deal with Mr. Gerres' affairs.

{¶15} Evidently, on or about January 23, 2012, Mr. Gerres became a resident at the Emeritus facility, for on that date, Ms. Evans, one of the successor agents, signed the arbitration agreement in question, submitting all disputes between Mr. Gerres and Emeritus to binding arbitration. At the time, Ms. Kennedy remained Mr. Gerres' attorney-in-fact.

{¶16} Unfortunately, Mr. Gerres died October 17, 2013. September 23, 2014, Ms. Kennedy filed her complaint in wrongful death and survivorship against seven defendants: Emeritus; Robinson Memorial Hospital; Dr. Daniel Kendis, M.D.; Dr. Mark E. Kaplan, M.D.; Western Reserve Senior Care; Dr. Sataya Acharya, M.D.; and Denise Mohar, CNP. The various defendants answered, demanding jury trials, and discovery ensued. On or about March 24, 2015, Emeritus filed its motion to stay proceedings and compel arbitration. This was opposed by Ms. Kennedy and Dr. Kaplan.

{¶17} June 5, 2015, the trial court filed its judgment entry denying the motion to stay proceedings and compel arbitration. In pertinent part, the trial court held:

{¶18} "[I]t is clear that Michelle Evans was acting as a successor agent pursuant to the power of attorney [when she signed the arbitration agreement]. Unfortunately, Ms. Evans power had not yet transferred to her as she was only a successor agent. Any representations regarding the authority of the successor agent, though they may have been relied upon as stated in the power of attorney, do not cause the successor agent to stand in the place of the principal."

3

{¶19} Emeritus timely noticed this appeal, assigning one error:

{¶20} "The trial court erred by denying defendant Emeritus of Ravenna Senior Living's motion to stay proceedings and compel arbitration and by failing to determine that all claims brought by plaintiffs against defendant Emeritus of Ravenna Senior Living are subject to the arbitration agreement as a written arbitration agreement, signed by a person with binding authority under Ohio law on behalf of plaintiffs, exists." [1]

{¶21} Under this assignment of error, Emeritus presents two issues. The first is: "Whether Michele Evans had authority to sign the arbitration agreement?" Emeritus argues the trial court misinterpreted the power of attorney, by concluding Ms. Evans had not succeeded to her authority as an agent, able to act on Mr. Gerres' behalf. Emeritus points out that the fourth clause of the power of attorney provides that Mr. Gerres appointed Ms. Evans and Ms. Mager as his "alternate *or* successor agents," to Ms. Kennedy. (Emphasis added.) Essentially, Emeritus contends all three were competent to act for Mr. Gerres, and that Ms. Evans could sign the arbitration agreement, even though Ms. Kennedy remained his attorney-in-fact at the time it was signed. As further support for this interpretation of the power of attorney, Emeritus notes that it could have included language specifying that the alternate or successor agents could only act if the agent died, resigned, or was unable to serve, but did not. We decline to reach this issue, finding the second issue presented by Emeritus dispositive.

---

1. February 24, 2016, after oral argument in this case, Ms. Kennedy submitted supplemental authority, in the form of *Scott v. Kindred Transitional Care & Rehab.*, 8th Dist. Cuyahoga No. 103256, 2016-Ohio-495. Ms. Kennedy made a brief argument outlining her view of this case, in addition to submitting the citation. That same day, Emeritus moved to strike, noting that Loc.R. 21(E) does not permit any argument in connection with a submission of supplemental authority. Ms. Kennedy has opposed the motion to strike, and Emeritus has replied. On due consideration, we deny the motion to strike, and accept the supplemental authority, but ignore the arguments made about it. We respectfully find the *Scott* case inapplicable. Therein, the trial court and the court of appeals found an arbitration agreement unenforceable because there was *no* written power of attorney authorizing the decedent's alleged agent to sign any agreement whatsoever.

**{¶22}** A power of attorney is a written instrument. *Testa v. Roberts*, 44 Ohio App.3d 161, 164 (6th Dist.1988). It is interpreted according to contract principles. *See, e.g.*, *Alexander v. Buckeye Pipeline Co.*, 53 Ohio St.2d 241, paragraph one of the syllabus.

**{¶23}** "The interpretation of a contract is a question of law that we review de novo. *Allstate Indemn. Co. v. Collister*, 11th Dist. Trumbull No. 2006-T-0112, 2007-Ohio-5201, ¶15, citing *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108, * * * (1995). Our primary goal is to ascertain and give effect to the intent of the parties. *Hamilton Ins. Servs., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273, * * * (1999). We presume the intent of the parties to a contract resides in the language used in the written instrument. *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, * * * (1987), paragraph one of the syllabus. A contract is to be read as a whole and the intent of each part gathered from a consideration of the whole. *Saunders v. Mortensen*, 101 Ohio St. 3d 86, 2004-Ohio-24, * * *." (Parallel citations omitted.) *Andover Village Retirement Community*, 11th Dist. Ashtabula No. 2013-A-0057, 2014-Ohio-4983, ¶11.

**{¶24}** Further, appellate courts will not construe a contract so as to reach an absurd result. *QualChoice, Inc. v. Nationwide Ins. Co.*, 11th Dist. Lake No. 2007-L-172, 2008-Ohio-6979, ¶37.

**{¶25}** Emeritus' second issue is: "Whether Emeritus justifiably relied on the intent of Donald R. Gerres, expressed through the language of the power of attorney, to determine that Michele Evans had authority to sign the arbitration agreement?" Under this issue, Emeritus advances the doctrine of apparent authority of an agent to act for her principal. As stated by the Supreme Court of Ohio, the doctrine provides:

5

{¶26} "[E]ven where one assuming to act as agent for a party in the making of a contract has no actual authority to so act, such party will be bound by the contract if he has by his words or conduct, reasonably interpreted, caused the other party to the contract to believe that the one assuming to act as agent had the necessary authority to make the contract. Restatement of the Law of Agency, 76, Section 27; 1 Ohio Jurisprudence, 674, Section 34. See *Kroeger, Supt., v. Brody, Trustee*, 130 Ohio St., 559, * * *." (Parallel citation omitted.) *Miller v. Wick Bldg. Co.*, 154 Ohio St. 93, 95-96 (1950).

{¶27} Emeritus argues it had the right to rely on Ms. Evans' apparent authority to sign the power of attorney. We agree. The right of third parties to rely on the acts and representations of the attorneys-in-fact as set forth in the subject power of attorney is wide-ranging: Emeritus could reasonably rely on Ms. Evans' act in signing the arbitration agreement that she possessed the power to do so.

{¶28} Nevertheless, we must further enquire as to what claims are subject to arbitration in this case. In *Peters v. Columbus Steel Castings Co.*, 115 Ohio St.3d 134, 2007-Ohio-4787, the Supreme Court of Ohio held that a decedent could not bind his or her beneficiaries to arbitrate wrongful death claims. *Id.* at ¶19. June 6, 2016, appellees submitted a second notice of supplemental authority to this court, that being the June 1, 2016 decision in *Vickers v. Canal Pointe Nursing Home & Rehab. Ctr.*, 9th Dist. Summit No. 27757, 2016-Ohio-3244. In that case, the Ninth District considered the effect of the decision in *Marmet Health Care Ctr., Inc v. Brown*, 565 U.S.   , 132 S.Ct. 1201 (2012) on Ohio law.

{¶29} "In *Marmet Health Care Ctr., Inc.*, the United States Supreme Court held that states may not create categorical bans 'against predispute agreements to arbitrate personal-injury or wrongful-death claims against nursing homes (* * *).' *Marmet Health Care Ctr., Inc.* at 1204. There, family members in three consolidated cases signed admission agreements with nursing homes on behalf of their relatives, who were unable to do so at the time of their admissions. All three agreements contained arbitration clauses that the nursing homes later sought to invoke. The Supreme Court of Appeals of West Virginia determined that the arbitration clauses were unenforceable as a matter of public policy. *See Brown ex rel. Brown v. Genesis Healthcare Corp.*, 228 W.Va. 646, * * * (2011). In essence, the West Virginia Court carved out an exception for arbitration agreements that arise in the context of nursing home admissions due to the inherently complicated and stressful circumstances that typically exist in those circumstances. The United States Supreme Court held, however, that "'(w)hen state law prohibits outright the arbitration of a particular type of claim, (* * *) (t)he conflicting rule is displaced by the (Federal Arbitration Act)."' *Marmet Health Care Ctr., Inc.* at 1203, quoting *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, * * * (2011). Because the West Virginia Court's holding amounted to a categorical ban on the arbitration of certain claims against nursing homes, the United States Supreme Court reversed the West Virginia Court's judgment. *See Marmet HealthCare Ctr., Inc.* at 1203-1204.

{¶30} "Upon review, we do not agree that the Ohio Supreme Court in *Peters* created the same type of categorical ban against arbitration that the United States Supreme Court struck down in *Marmet Health Care Ctr., Inc. Peters* was not a public policy decision. Rather, the *Peters* Court issued its decision on the basis of an

7

accepted contractual principle: 'that only signatories to an arbitration agreement are bound by its terms.'  *McFarren v. Emeritus at Canton*, 5th Dist. Stark No. 2013CA00040, 2013-Ohio-3900, ¶29, * * * citing *Peters*, 115 Ohio St.3d 134, 2007-Ohio-4787, * * *.  The Federal Arbitration Act specifically provides that arbitration provisions are valid and enforceable, 'save upon such grounds as exist at law or in equity for the revocation of any contract.' 9 U.S.C. 2.  "'(A)rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."' *Council of Smaller Ent. v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 665, * * * (1998), quoting *AT & T Tech.*, 475 U.S. 643, 648, * * * (1986). Accordingly, '(t)he holding in *Peters* requiring a real party in interest to sign an arbitration agreement for (it) to be enforceable is not in conflict with the (Act) (* * *).' *McFarren* at ¶29.

**{¶31}** "As previously set forth, wrongful death claims arise separately from survivorship claims and 'belong to separate individuals, even though they are generally brought by the same nominal party (the personal representative of the estate).' *Peters* at ¶17.  Mr. Vickers signed an admission agreement and arbitration agreement with Canal Pointe as his father's representative.  Canal Pointe never argued that he signed the agreement in an individual capacity such that it might be enforceable against him. *See McFarren* at ¶30.  Absent Mr. Vickers or his father's other beneficiaries signing the arbitration agreement in an individual capacity, 'they cannot be forced into arbitration.' *Peters* at ¶19.  As such, the trial court erred when it granted Canal Pointe's motion to stay and compel arbitration as to the wrongful death claim that Mr. Vickers brought on

8

behalf of his father's beneficiaries. *See McFarren* at ¶29-31. Mr. Vickers' sole assignment of error is sustained." (Parellel citations omitted.)

{¶32} In this case, appellees have both survivorship and wrongful death claims against Emeritus. We agree with the Ninth District that appellees are not bound to arbitrate the wrongful death claims, as they did not enter any contracts with Emeritus for arbitration of these claims. Consequently, appellees wrongful death claims are not subject to arbitration on remand, only their survivorship claims. [2]

{¶33} This appeal arose from Emeritus' motion to stay proceedings and compel arbitration. We note that those proceedings not subject to arbitration must, nevertheless, be stayed pending outcome of the arbitration. R.C. 2711.02(B) provides: "[i]f any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement * * *." See also *Estate of Younce v. Heartland of Centerville*, 2d Dist. Montgomery No. 26794, 2016-Ohio-2965, ¶47 "if any of the claims are subject to an arbitration agreement, R.C. 2711.02 requires a stay of the trial proceedings, regardless of whether the dispute also involves parties who are not a party to the agreement and who cannot be compelled to arbitrate." (Citation omitted.)

---

2. We note that on May 5, 2016, the Consumer Financial Protection Bureau proposed stringent new rules limiting arbitration clauses in credit card agreements and other consumer financial instruments. The New York Times Online, *Rule on Arbitration Would Restore Right to Sue Banks*, http://nyti.ms/1NY3FKX (accessed June 30, 2016).

9

{¶34} The judgment of the Portage County Court of Common Pleas is affirmed in part, and reversed and remanded in part.

CYNTHIA WESTCOTT RICE, P.J.,

DIANE V. GRENDELL, J.

concur.