[Cite as *Walcutt v. Greer*, 2024-Ohio-2094.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| BRETT WALCUTT, ET AL., | JUDGES:<br>Hon. Patricia A. Delaney, P.J. |
| Plaintiffs-Appellants | Hon. William B. Hoffman, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 23 CAE 09 0083 |
| JOHN RICHARD GREER, ET AL. | |
| Defendants-Appellees | O P I N I O N |

CHARACTER OF PROCEEDINGS: Appeal from the Delaware County Court of Common Pleas, Case No. 21 CV H 10 0486

JUDGMENT: Affirmed in part, reversed in part, remanded

DATE OF JUDGMENT ENTRY: May 30, 2024

APPEARANCES:

For Plaintiffs-Appellants

RICK L. BRUNNER
PATRICK M. QUINN
Brunner Quinn
5001 Horizons Drive, Suite #209
Columbus, Ohio 43220

For Defendants-Appellees

JOHN J. KULEWICZ
JOHN F. FURNISS, III
CHRISTOPHER A. LaROCCO
ERIC A. PARKER
Vorys, Sater, Seymour, and Pease, LLP
52 East Gay Street
P.O. Box 1008
Columbus, Ohio 43216-1008

*Hoffman, J.*

**{¶1}** Plaintiff-appellant Brett Walcutt (hereinafter "Walcutt") appeals the judgment entered by the Delaware County Common Pleas Court finding him in civil contempt of court and guilty of criminal contempt of court, and ordering him to pay a sanction of $35,000 in attorney fees to Defendant-appellee John Greer (hereinafter "Greer").

STATEMENT OF THE FACTS AND CASE

**{¶2}** This case arises from a dispute over the trustees of three trusts created by Greer, the financial transactions which took place concerning the trust assets, and Greer's power of attorney. On October 18, 2021, Walcutt and other plaintiffs filed the instant action against Greer and other defendants, including Colony Club Apartments, LLC, and Colony Square Apartments, LLC, who are also Appellees in the instant action.

**{¶3}** Walcutt and the other plaintiffs attached numerous documents to their complaint under an ex parte protective order, which permitted review of the exhibits only in person at the office of the Delaware County Clerk of Courts. On November 30, 2021, Walcutt and the other plaintiffs moved for another protective order to govern the exhibits attached to the complaint and other documents produced in discovery. The trial granted the protective order, but modified it to allow Attorney's-Eyes-Only designations.

**{¶4}** The protective order restricted the use and disclosure of documents governed by the order. The protected information was to be held by the receiving party solely for use in connection with this action. The order provided any disclosure must be "solely for the prosecution or defense of this action and not for any other purpose." However, the order did not restrict any party's use or disclosure of documents "obtained by such party independently of discovery proceedings herein." The protective order

provided after termination of the case, all confidential documents were to be destroyed or returned to the producing party. Finally, by its terms the order remained in effect after the termination of the case, and the trial court retained jurisdiction to enforce its terms.

{¶5} On December 17, 2021, Greer requested a status conference, stating the parties needed the trial court's assistance in resolving a discovery dispute. Prior to the scheduled conference, counsel for Walcutt distributed exhibits to the complaint, which were classified as Attorney's Eyes Only under the protective order, to all counsel, giving them her permission to share the documents with the parties. On January 3, 2022, the trial court issued a judgment holding Walcutt and his attorney could not disclose the documents or remove the confidentiality from the documents, which Greer had designated as Attorney's Eyes Only documents.

{¶6} Walcutt moved to "correct" the January 3, 2022 judgment, arguing a seizure of property or a due process violation occurs when a court permits a party to litigation to designate documents in the opposing party's possession as confidential under a protective order. The trial court overruled the motion. Walcutt appealed to this Court. We dismissed the case for want of a final appealable order on May 18, 2022. Discovery proceeded in the trial court, and Greer produced almost 300 pages of documents designated as confidential.

{¶7} On April 1, 2022, Walcutt and another of the plaintiffs in the instant action filed a guardianship action in the Delaware County Probate Court regarding Greer's competence. The instant action was stayed. A magistrate issued a report and recommendation finding Greer competent and denying the guardianship petition. The judge adopted the report and recommendation as its final judgment.

**{¶8}** Three days after the magistrate's report was filed, and while the instant action remained stayed, Walcutt filed a new action in the Franklin County Common Pleas Court, raising many of the same claims raised in the instant action, adding several new claims, and adding two defendants. Walcutt filed a verified complaint with thirteen exhibits. On the same day, he filed a motion asking for the exhibits to be filed under seal in Franklin County. However, the published guidance from the Franklin County Clerk of Courts required a signed order to be in place directing the documents be filed under seal before the documents are filed. Walcutt filed the exhibits before obtaining an order sealing them. As a result, the documents were available on the public docket from November 18, 2022, until December 5, 2022, when the exhibits were sealed. In addition, Walcutt requested the clerk of courts send the documents in 83 service packets, to 57 defendants, on four different dates from November of 2022, through January of 2023. On May 30, 2023, the Franklin County trial court issued a protective order which designated these exhibits as confidential.

**{¶9}** Greer, Colony Club Apartments, LLC, and Colony Square Apartments, LLC, moved for contempt on November 29, 2022, concerning Walcutt's disclosure in the Franklin County case of documents covered by the protective order in this case. Less than two hours after the motion to show cause was filed, Walcutt dismissed the instant action.

**{¶10}** The trial court held a hearing on the motion to show cause. The trial court found six of the documents Greer claimed were covered by the protective order were obtained outside the discovery process in this case. The trial court found two documents covered by the protective order would not have been obtained by Walcutt outside the

discovery process. These two documents, the operating agreements of Colony Club Apartments and Colony Square Apartments, were adopted after Walcutt was terminated from his role as manager of these companies. The trial court held Walcutt in civil contempt of court, and found him guilty of criminal contempt of court. As to the civil contempt, the trial court ordered Walcutt to cease using the documents to prosecute the Franklin County case unless he properly obtained them through discovery in that case, make necessary efforts to recover and remove documents placed in the public record or distributed to anyone other than Greer, and return to the producing party any confidential documents received in discovery in this case. Walcutt was ordered to pay $50 per day for each day he remained in contempt of the protective order. As a sanction for criminal contempt, the trial court ordered Walcutt to pay Greer $35,000, representing a portion of the attorney's fees incurred in prosecution of the contempt motion and the efforts to remove the documents from the public record in the Franklin County case.

**{¶11}** It is from the August 28, 2023 judgment of the trial court Walcutt prosecutes his appeal, assigning as error:


I. THE TRIAL COURT ERRED IN FINDING APPELLANT IN CONTEMPT.

II. THE TRIAL COURT ERRED IN IMPOSING CONTEMPT SANCTIONS ON APPELLANT.

I.

**{¶12}** In his first assignment of error, Walcutt argues the trial court erred in finding him in contempt of court.

**{¶13}** "Contempt of court is defined as disobedience of an order of a court. It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." *Windham Bank v. Tomaszczyk,* 27 Ohio St.2d 55, 271 N.E.2d 815, 815–16 (1971).

**{¶14}** When distinguishing between civil and criminal contempt, courts consider the character and purpose of the contempt sanctions. *Denovchek v. Board of Trumbull Co. Commissioners*, 36 Ohio St.3d 14, 520 N.E.2d 1362 (1988). The purpose of civil contempt is to render punishment which is remedial or coercive and for the benefit of the complainant. *Brown v. Executive 200, Inc.,* 64 Ohio St.2d 250, 253, 416 N.E.2d 610 (1980). The purpose of criminal sanctions is to vindicate the authority of the court and punish past acts of disobedience, and thus the penalties for criminal contempt are unconditional and "may take the shape of an absolute fine for a specific amount or a determinate period of confinement." *Brown v. Executive 200, Inc.,* 64 Ohio St.2d 250, 254, 416 N.E.2d 610 (1980).

**{¶15}** In a civil contempt proceeding, the moving party must prove by clear and convincing evidence a valid court order exists, the offending party knew about the order, and the offending party violated the order. *Meek v. Geneva,* 2017-Ohio-7975, 98 N.E.3d 907, ¶33 (5th Dist. Tuscarawas). The fact the contemnor acted innocently and not in intentional disregard of the court order is not a defense to a charge of civil contempt. *Windham, supra,* paragraph 3 of the syllabus.

**{¶16}** In a criminal contempt proceeding, the moving party must prove beyond a reasonable doubt a valid court order exists, the offending party knew about the order, and the offending party violated the order. *Executive 200, supra*, at 251.

**{¶17}** An appellate court's standard of review of a trial court's finding of contempt is abuse of discretion*. State ex rel. Celebrezze v. Gibbs*, 60 Ohio St.3d 69, 573 N.E.2d 62 (1991). In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

**{¶18}** Walcutt first argues the trial court erred in finding him in contempt because the documents he is found to have disclosed in violation of the protective order were documents he had access to outside of the discovery process in the instant case. The protective order provides, "Nothing herein shall impose any restriction on the use or disclosure by a party of documents or information obtained by such party independently of discovery proceedings herein." Judgment Entry, 12/13/21.

**{¶19}** Walcutt argues as a beneficiary of a sub-trust of the Greer Family Trust, he had the legal right to obtain the amended operating agreements in question. However, the protective order does not exclude documents which a party *could have* obtained independently of the discovery process. Rather, it excludes documents *in fact* obtained independently of the discovery process. There is no evidence Walcutt obtained the documents outside the discovery process in this case. The trial court found the documents attached to the Franklin County complaint had Bates numbers stamped in the bottom right corner beginning with "JRG," which is the Bates designation used by Greer's attorneys, and additionally contain designations at the top stating, "Confidential — Subject

to Protective Order." Such markings are an indication the documents were obtained in discovery in the instant case, and not by independent means. We find the trial court did not err in finding Walcutt obtained the documents in the discovery process in this case, and we further find whether or not he could have legally obtained the documents through other means is irrelevant.

**{¶20}** Walcutt next argues the trial court abused its discretion in finding him in criminal contempt because he did not intentionally disclose the documents in the Franklin County case. He argues the pleadings in Franklin County were drafted and filed by his attorney, and therefore he did not intentionally violate the protective order. Walcutt argues he did not understand the process by which to file documents under seal in Franklin County, and therefore he may not be held responsible for his attorney's failure to properly file the documents under seal.

**{¶21}** Although in his testimony Walcutt alluded to the fact he was not an attorney and therefore did not fully understand the pleadings and proceedings in Franklin County, he did not specifically raise in the trial court he did not have intent to violate the protective order because his attorney was responsible for the disclosure. The trial court specifically addressed the six arguments raised by Walcutt, and his current argument is not among those the trial court addressed. Judgment Entry, 8/28/23, pp. 11-12. "It is well established that a party cannot raise any new issues or legal theories for the first time on appeal." *Carrico v. Drake Constr.*, 5th Dist. Stark No. 2005 CA 00201, 2006-Ohio-3138, ¶ 37, *quoting Dolan v. Dolan*, Trumbull App. Nos. 2000–T–0154 and 2001–T–0003, 2002–Ohio–2440, at ¶ 7, *citing Stores Realty Co. v. Cleveland* (1975), 41 Ohio St.2d 41, 43, 322 N.E.2d 629 (1975).

**{¶22}** However, even if Walcutt had not waived this issue by failing to raise it in the trial court, we find the record contains sufficient evidence he intentionally violated the protective order to support the trial court's finding of criminal contempt. At the contempt hearing, Walcutt admitted counsel did not file documents he did not first authorize. Tr. 101. Walcutt testified he authorized his attorney to submit the exhibits in the Franklin County case. Tr. 119. In his verified complaint filed in Franklin County, Walcutt verified the exhibits attached thereto, including the documents at issue in the contempt proceedings in Delaware County, were true and accurate copies. Tr. 116-118. Further, even if he intended to file the documents under seal, Walcutt would still have violated the protective order in the instant case, which prohibited the use of confidential documents outside the scope of the Delaware County case. We find the trial court did not abuse its discretion in finding Walcutt intentionally violated the protective order.

**{¶23}** Walcutt argues the trial court erred in failing to ensure he had conflict-free counsel. He argues because his attorney was responsible for drafting the pleadings in Franklin County, the trial court should have been aware there was the potential for a conflict between Walcutt and his attorney, and the trial court had an affirmative duty to inquire.

**{¶24}** As discussed above, Walcutt did not argue in the trial court his attorney was solely to blame for the violation of the protective order; therefore, the issue giving rise to the potential conflict was not squarely before the trial court. Walcutt cites this Court to *State v. Williams*, 166 Ohio St.3d 159, 2021-Ohio-3152, 184 N.E.3d 29. In *Williams*, the defendant and his wife were represented by the same attorney. The Ohio Supreme Court held the trial court did not have an affirmative duty to inquire into a possible conflict:

Against this backdrop, we turn to the facts of this case to first determine whether the trial court's affirmative duty to inquire into the possibility of a conflict related to the dual representation arose. We agree with the court of appeals that it did not. *Williams II,* 2020-Ohio-3588, at ¶ 36. The transcript is clear that no possible conflict was brought to the trial court's attention. Further, there is nothing in the record to indicate that the trial court should have reasonably known of a possible conflict. Marshall was given opportunities to address the court and did not say anything that would have reasonably put the court on notice of a possible conflict created by the dual representation. See *State v. Ingol*, 89 Ohio App.3d 45, 49, 623 N.E.2d 598 (9th Dist. 1993) (absent an objection or circumstance in which the court knows or should reasonably know of a possible conflict, a trial court may assume no conflict exists or that the risk is known and accepted); *Haugabrook*, 2016-Ohio-5838, at ¶ 17, 21 (vacating appellant's guilty plea after finding that prior to pleading guilty, appellant had expressed reservations to the trial court about the dual representation of him and his wife, claiming that she was innocent and they were both subject to a package plea deal).

**{¶25}** *Id.* at ¶16.

**{¶26}** Similarly, in the instant case, no possible conflict was brought to the trial court's attention. The motion to show cause was not directed at Walcutt's attorney, but solely at Walcutt. Walcutt raised the issue his attorney was responsible for the violation

of the protective order, absolving him of responsibility, for the first time on appeal. We find an affirmative duty to inquire into the possibility of a conflict did not arise in the instant case.

{¶27} We find the trial court did not abuse its discretion in finding Walcutt guilty of both civil and criminal contempt.

{¶28} The first assignment of error is overruled.

II.

{¶29} In his second assignment of error, Walcutt argues the trial court erred in the sanction imposed for criminal contempt. As a sanction for criminal contempt, the trial court ordered Walcutt to pay "attorney's fees in the amount of $35,000 to Greer, representing a portion of the attorney's fees incurred related to Greer's motion to show cause and efforts to remove the documents from the public record in the Franklin County Case."

{¶30} Walcutt first argues the sanction constituted improper "fee shifting," which is inconsistent with the purposes of criminal contempt sentencing. He argues the attorney fees were not established by the evidence, no evidence was presented to demonstrate the fees were reasonable, and the sanction representing attorney fees was awarded to Greer personally rather than to the two limited liability companies responsible for the fees. He also argues a sanction of $35,000 was disproportionate to his conduct.

{¶31} The Ohio Supreme Court has distinguished between the purpose of a sanction for criminal and civil contempt:

While both types of contempt contain an element of punishment, courts distinguish criminal and civil contempt not on the basis of punishment, but rather, by the character and purpose of the punishment. Gompers, supra; Kilbane, supra. Punishment is remedial or coercive and for the benefit of the complainant in civil contempt. Prison sentences are conditional. The contemnor is said to carry the keys of his prison in his own pocket, In re Nevitt (C.A. 8, 1902), 117 F. 448, 461, since he will be freed if he agrees to do as ordered. Criminal contempt, on the other hand, is usually characterized by an unconditional prison sentence. Such imprisonment operates not as a remedy coercive in its nature but as punishment for the completed act of disobedience, and to vindicate the authority of the law and the court. See, generally, Gompers, supra; Bd. of Edn. v. Brunswick Edn. Assn. (1980), 61 Ohio St.2d 290, 401 N.E.2d 440; State v. Local Union 5760 (1961), 172 Ohio St. 75, at 82-83, 173 N.E.2d 331. Therefore, to determine if the sanctions in the instant cause were criminal or civil in nature, it is necessary to determine the purpose behind each sanction: was it to coerce the appellees to obey the consent judgment decree, or was it to punish them for past violations?

**{¶32}** *Executive 200, supra*, at 253-54.

**{¶33}** Although the trial court stated the award of $35,000 in attorney fees to Greer was a sanction imposed for criminal contempt, the sanction is remedial rather than punitive in nature, and for the benefit of the complainant.  The sanction imposed was not

to vindicate the authority of the law and the court, but rather to compensate Greer for expenses incurred as a result of the disclosure of the documents. We find an award of attorney fees to Greer was not a lawful sanction for a finding of criminal contempt.

{¶34} A trial court may within its discretion include attorney fees as part of the costs taxable to a party found guilty of civil contempt. *Planned Parenthood Assn. of Cincinnati, Inc. v. Project Jericho,* 52 Ohio St.3d 56, 67, 556 N.E.2d 157, 168 (1990). In *Cleveland Civ. Serv. Emps. Assn. v. Cleveland*, 8th Dist. Cuyahoga No. 93922, 2010-Ohio-4352, the trial court ordered a portion of a sanction imposed for civil contempt to be paid to the aggrieved party "as a penalty for the contempt and to cover their reasonable attorney fees, costs, and expenses," and the order was made "in lieu of a separate order to pay plaintiff's attorney fees, costs and expenses, as would be justified in this matter." *Id.* at ¶ 103. The court of appeals reversed. While recognizing a trial court may, in its discretion, award attorney fees as part of the costs taxable to a defendant for contempt, the party seeking fees has the burden of introducing sufficient evidence of the attorney's services and the reasonable value thereof. *Id.* at ¶¶92-93. Because the trial court lacked crucial information regarding the reasonableness of the fees, the court of appeals concluded the trial court abused its discretion in fashioning the attorney fee award as the sanction for contempt. *Id.* at ¶104.

{¶35} In the instant case, although in their show cause motion Greer requested attorney fees be awarded, a separate hearing on attorney fees did not take place. The notice issued by the trial court setting the matter for hearing stated the scheduled hearing was on the motion to show cause as to why Walcutt should not be held in contempt of court. At the contempt hearing, Lynn Greer testified the attorney fees incurred by the

LLCs for preparation of the documents which were improperly disclosed by Walcutt totaled around $40,000, and the legal fees incurred with respect to the contempt motion exceeded $150,000. Tr. 35-36, 39. No evidence was presented concerning the reasonableness of fees incurred. Although upon proper proof the trial court had authority to award attorney fees to Greer for civil contempt, we find the trial court abused its discretion in fashioning an award of attorney fees to Greer as a sanction for criminal contempt, particularly in the absence of evidence of the reasonableness of fees incurred.

**{¶36}** However, because the penalties for civil and criminal contempt are included in the same entry and are intertwined, and the trial court had authority upon proper proof to award attorney fees for civil contempt, we vacate the penalties imposed for both criminal and civil contempt, and remand this matter to the trial court to reconsider sanctions for both civil and criminal contempt, and, if the trial court deems appropriate, conduct a hearing on Greer's request for attorney fees for civil contempt.

**{¶37}** The second assignment of error is sustained.

{¶38} The judgment of the Delaware County Common Pleas Court is affirmed as to the finding of criminal and civil contempt. The sanctions for criminal and civil contempt are vacated, and this case is remanded for further proceedings according to law, consistent with this opinion.


By: Hoffman, J.
Delaney, P.J. and
Baldwin, J. concur.